**Steven Carl ADAMS, Plaintiff,**

v.

**Lawrence KINCHELOE, Sgt. Frank and R. Percifield, Defendants.**

**No. C–88–593–RJM.**

United States District Court, E.D. Washington.

Jan. 29, 1990.

1386

Steven Carl Adams, pro se.

John Scott Blonien, Washington State Asst. Atty. Gen., for defendants.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

ROBERT J. McNICHOLS, District Judge:

BEFORE THE COURT is the defendant's motion for summary judgment set for hearing without oral argument.

# I.

## LAW OF SUMMARY JUDGMENT

FRCP 56(c) provides that judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, this court must determine whether a fair-minded jury could return a verdict for the nonmoving party. *Id.* at 252, 106 S.Ct. at 2512. The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Where the moving party has met his initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson, supra* 477 U.S. at 248, 106 S.Ct. at 2510. The nonmoving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. *Id.*

In evaluating the appropriateness of summary judgment the court must first determine whether a fact is material; and if it so finds must then determine whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court.

As to materiality, the applicable substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual disputes which are irrelevant or unnecessary to the outcome are not counted. *Anderson, supra* 477 U.S. at 248, 106 S.Ct. at 2510.

Given that a fact is material, summary judgment will not lie if the dispute about that fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 251–252, 106 S.Ct. at 2511–2512.

Though the *Anderson* court stated that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial, it also stated that if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson, supra* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

*Id.* at 252, 106 S.Ct. at 2512.

# II.

## STATEMENT OF THE CASE

Plaintiff is an inmate at the Washington State Penitentiary in Walla Walla. On October 28, 1988, plaintiff filed an in forma pauperis complaint against the defendants pursuant to 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution. Plaintiff alleges that his restriction to a diet of what is known as "nutrient loaf" or "nutra-loaf" and the manner in which he was served with this food, constitute cruel and unusual punish-

ment and a deprivation of his civil rights. The plaintiff seeks injunctive relief, declaratory relief and punitive damages.

■ Plaintiff has not filed a response to the defendants' motion for summary judgment. The failure to respond is despite the fact that an order dated October 27, 1989 advised plaintiff of the summary judgment rule and its requirements in some detail. Pursuant to LR 7(h)(5), a failure to timely file a memorandum of points and authorities in support of or in opposition to any motion may be considered by the Court as consent on the part of the party failing to file such memorandum to the entry of default.

Pursuant to LR 56(c), in determining any motion for summary judgment, the Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by the record as set forth in LR 56(b). LR 56(b) provides that any party opposing a motion for summary judgment must within eleven (11) days of service of the motion, file a statement of material facts setting forth the specific facts which the opposing party asserts establishes a genuine issue of material fact precluding summary judgment.

Plaintiff's failure to comply with the aforementioned local rules is a sufficient basis in itself to partially grant defendants' motion for summary judgment. Since plaintiff has not controverted the defendants' statement of material facts, this court accepts those facts to be true for the purpose of this motion.[1]

## III.

## FACTS

In August 1988, the plaintiff was detained in the Intensive Management Unit (IMU) at the Washington State Penitentiary. On August 22, 1988, defendant Percifield, an officer at the penitentiary, observed the plaintiff throw a styrofoam cup of liquid at another inmate. Although plaintiff claims that the incident was fabricated by the officer and the other inmate, he later admitted to the infraction at a disciplinary hearing held on August 25, 1988 and during the course of his deposition taken on February 22, 1989.[2] (Exhibit 6 to Defendants' Memorandum in Support of Motion for Summary Judgment at p. 9).

Based on Officer Percifield's report, Correctional Officer C. Frank submitted a request that plaintiff be placed on five day diet of nutra-loaf and five days of container restrictions. The request was approved.

Nutra-loaf is a "meatloaf-like food substance" consisting of milk, potatoes, tomato juice, cabbage, salad oil, flour, celery, raw eggs, beans, salt, carrots and ground beef. These ingredients are combined and then baked. According to the penitentiary dietician, nutra-loaf satisfies basic daily nutritional and caloric requirements. Furthermore, it is similar to the nutritional and caloric content of the regular prison meals. (Exhibit 8 to Defendants' Memorandum in Support of Motion for Summary Judgment).

Plaintiff was placed on the nutra-loaf diet commencing August 23, 1988 and ending on August 28, 1988. Plaintiff was not provided with any utensils during the course of his nutra-loaf diet.[3] Plaintiff was served nutra-loaf three times a day during

---

1. Despite the plaintiff's failure to respond to the defendant's motion, this court can discern very few disputed facts in comparing the allegations in the plaintiff's complaint to the defendants' statement of material facts.

2. Plaintiff does not allege any constitutional violations with regard to his being infracted. Plaintiff's allegations are related only to being fed "nutra-loaf".

3. It appears that there is a typographical error in the defendants' answer (CR 6). According to

paragraph 1.4 on page 2, "nutra-loaf is a nutritionally balanced food stuff that is designed to be eaten with the aid of utensils when giving an inmate access to eating utensils would constitute a threat to the orderly operation of the institution". Presumably, defendants intended to state that "nutra-loaf" is to be eaten *without* the aid of eating utensils considering that they have not denied plaintiff's allegation that he was not given utensils. The defendants make only a passing reference in their memorandum as to plaintiff's lack of utensils.

this five day period. In his complaint, plaintiff alleges that he would have to go to the back of his cell and the prison staff would then open the "cuff-port" in his cell door and "throw the nutra-loaf on the floor." The defendants claim they lack sufficient information to form a belief as to this allegation.[4]

Plaintiff alleges that he could not bring himself to eat the nutra-loaf and therefore went without food for five days. According to the defendant's statement of material facts, plaintiff refused to eat three servings of nutra-loaf on three separate days.

The plaintiff alleges that because of his refusal to eat the nutra-loaf, he suffered hunger pains and was unable to sleep. The defendants assert in their statement of material facts that prior to being placed on the nutra-loaf diet, plaintiff had seen a physician twice due to eye irritations and nasal problems. The clear implication is that the defendants believe plaintiff's health problems, if any, were due to pre-existing medical conditions.

## IV.

### DISCUSSION

In order to successfully assert an action under 42 U.S.C. § 1983, it is necessary to show that the conduct complained of has been committed by a person acting under color of state law and the conduct must deprive the plaintiff of rights, privileges, or immunities secured by the constitutional laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

The defendants contend that the conduct complained of in the instant case is not cruel and unusual under the Eighth Amendment and hence, plaintiff is not entitled to relief under 42 U.S.C. § 1983.

■ The Eighth Amendment, as applied to convicted prisoners, involves consideration of three factors: 1) the wanton and unnecessary infliction of pain; 2) punishment which is disproportionate to the severity of the crime; and 3) conditions

which, alone or in combination, deprive an inmate of the minimal civilized measure of life's necessities. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399–2400, 69 L.Ed.2d 59 (1981).

"[C]onduct that does not purport to be punishment must involve more than ordinary due care.... It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause...." *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). (citations omitted). A prison condition constitutes "unnecessary and wanton infliction of pain" when the condition violates "evolving standards of decency," or is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir.1982) (citations omitted).

■ In the Ninth Circuit, each unrelated condition that allegedly contributed to the violation of plaintiff's Eighth Amendment rights is considered separately, that is, "a number of *unrelated* conditions, each of which satisfy eighth amendment requirements, cannot in combination amount to an eighth amendment violation." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986) (emphasis original), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). However, related conditions may be combined in determining whether there is a violation of the Eighth Amendment. "[R]elated conditions are those conditions that combine to deprive a prisoner of a discrete basic human need, [e.g.], food, clothing, shelter, sanitation, medical care and personal safety." *Id.* at 1107.

In determining whether any condition or combination of related conditions violates the Eighth Amendment, the court "may consider the length of time that the prisoner must go without these benefits." *Hoptowit*, 682 F.2d at 1258. The court may also consider the existence of emergency situations. "[W]hen a genuine emergency exists, prison officials may be more restric-

---

**4.** The defendants' motion for summary judgment does not address the plaintiff's allegations

with respect to the manner in which the nutra-loaf is served.

tive than they otherwise may be, and certain services may be suspended temporarily. The more basic the particular need, the shorter the time it can be withheld.... In determining the existence of such needs, we must give reasonable leeway to prison officials." *Hoptowit,* 682 F.2d at 1259. " 'Prison administrator's ... should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " *Albers v. Whitley,* 475 U.S. at 321–322, 106 S.Ct. at 1085 (citing to *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979)).

## A. Nutra–Loaf as a Food Item

■ Diet has been the basis for numerous Eighth Amendment claims.[5] However, the specific issue of nutra-loaf, or a variant thereof called "food loaf", has rarely been addressed.

In *United States v. Michigan,* 680 F.Supp. 270 (W.D.Mich.1988), the United States contested the state's use of food loaf for prisoners in segregation units. "Food loaf" is a substance prepared by grinding up and combining the various components of a regular prison meal.[6] The substance is formed into a loaf and baked. It is then wrapped in plastic and served without a tray and without utensils. The food loaf is similar to the nutritional and caloric content of regular prison meals.

The court found that the use of "food loaf", under the particular circumstances of that case, did not violate the Eighth Amendment. According to the court, there is no doubt that the use of food loaf is intended as punishment for misconduct, designed to prevent the throwing of food, utensils and human waste.

Citing *Cunningham v. Jones,* 567 F.2d 653 (6th Cir.1977), the court noted that the Eighth Amendment requires only that inmates be provided with a diet which is nutritionally adequate for the maintenance of normal health and served in a sanitary manner. The fact that it is unappetizing, in itself, will not support a constitutional claim.

In the *Michigan* case, the court found it significant that there was no evidence that prisoners had refused to eat nutra-loaf nor any evidence of adverse health effects, such as weight loss. Furthermore, the court pointed out that the content of food loaf is varied and is made from regular prison meals which are nutritionally adequate. The court did note that in special circumstances, such as where an inmate suffers from a medical condition or where the use of food loaf is grossly disproportionate to the offense committed, it may constitute cruel and unusual punishment to serve food loaf.[7]

In the case before this court, it is ludicrous for the defendants to suggest that nutra-loaf is not a form of punishment. The policy behind the imposition of food loaf in the *Michigan* case is nearly identical to the policy which underlies the imposition of nutra-loaf. Plaintiff was placed on nutra-loaf because he used a container to throw a substance. This is clearly enumerated in the penitentiary's written directives

---

**5.** *Jackson v. State of Arizona,* 885 F.2d 639 (9th Cir.1989); *Domegan v. Fair,* 859 F.2d 1059 (1st Cir.1988); *Rust v. Grammer,* 858 F.2d 411 (8th Cir.1988); *Robles v. Coughlin,* 725 F.2d 12 (2nd Cir.1983); *Malik v. Tanner,* 697 F.Supp. 1294 (D.C.N.Y.1988); *Knop v. Johnson,* 667 F.Supp. 512 (W.D.Mich.1987); *Dohner v. McCarthy,* 635 F.Supp. 408 (C.D.Cal.1985).

**6.** In this respect, it appears that Michigan's "food loaf" offers a little more variety than Washington's "nutra-loaf" which is consistently made out of the same tasty ingredients.

**7.** Besides *U.S. v. Michigan,* the only other case this court could find involving a substance sim-

ilar to nutra-loaf, is *Holt v. Sarver,* 300 F.Supp. 825 (E.D.Ark.1969). In that case, the court found no constitutional violation where inmates in isolation units were served "grue". This "grue" consisted of meat, potatoes, vegetables, eggs, oleo syrup, and seasoning baked together in a pan and served in four inch squares. Although neither appetizing or attractively served, the court found that the grue was a "wholesome and sufficient diet for men in close confinement day after day." In *Holt,* the inmates were afforded the additional luxury of having their "grue" served to them on trays pushed through the gratings at the bottom of the cell doors.

as a violation which may result in the nutra-loaf diet. (Exhibit 4 to Defendant's Memorandum in Support of Motion for Summary Judgment). It is obviously designed to prevent such behavior and serve as a deterrent to those who, like plaintiff, have already erred. As in the *Michigan* case, the attempts of the defendants to style nutra-loaf as an administrative measure or a "behavior modification device" are deceiving. Serving nutra-loaf is a response to negative behavior which purportedly threatens the orderly functioning of the institution. Nutra-loaf is punishment whichever way you look at it (or smell it).

There are some distinctions between *Michigan* and the plaintiff's case. As already noted, the contents of Michigan's food loaf varies from meal to meal, whereas Washington's nutra-loaf is consistently made of the same ingredients. In the instant case, unlike in the *Michigan* case, there is evidence that plaintiff did refuse to eat some of the nutra-loaf and there are allegations of adverse health effects. However, none of these factors considered separately or in combination persuades this court that the serving of nutra-loaf to plaintiff is a violation of the Eighth Amendment.

It is highly questionable whether Michigan's food loaf is tastier or more appetizing because the contents are varied from day to day. The *Michigan* court noted that the inmates generally found the food loaf to be unappetizing. In the instant case, it would probably not be of much solace for plaintiff to know that each serving of nutra-loaf consisted of different ingredients. Other than the allegations in his complaint, plaintiff has not controverted the defendants' statement that plaintiff refused only three nutra-loaf meals out of the fifteen which were served to him.[8] Granted that nutra-loaf is by no means a culinary delight, plaintiff's actions do not indicate that nutra-loaf is so repulsive that it cannot or should not be eaten. If plaintiff was so revolted by nutra-loaf, he could have refrained from eating it. A healthy inmate can probably manage five days without food as long as he receives sufficient liquids (i.e. water).

There is no evidence that plaintiff was suffering from a medical condition that could have been aggravated by nutra-loaf. Plaintiff sought treatment for nasal problems and eye irritations prior to being placed on nutra-loaf. There is no evidence that this particular condition was aggravated by nutra-loaf. There is no evidence that plaintiff sought medical treatment as a result of being served nutra-loaf.[9] Plaintiff's allegations of sleeping difficulties and headaches would seem consistent with his pre-existing eye and nasal irritation. Plaintiff does not allege that he suffered from any stomach or intestinal disorders as a result of eating nutra-loaf.

Plaintiff does not allege that nutra-loaf is nutritionally or calorically inadequate. The evidence presented by the defendants demonstrates that as unappetizing as nutra-loaf may seem, it meets the daily nutritional requirements just like Michigan's food loaf.

The defendants do point out that nutritionally adequate food may be cruel and unusual if it is so unappetizing that inmates will not eat it. *Finney v. Hutto*, 410 F.Supp. 251 (E.D.Ark.1976).[10] Although nutra-loaf is probably unappetizing to the majority of the prison population, in plaintiff's case, it was not so bad that he refused to eat it. Furthermore, there is no evidence that plaintiff lost weight while eating nutra-loaf.

The fact that plaintiff was on the nutra-loaf diet for only a very limited period of time (five days) further persuades this court that there has been no violation of

---

8. The court takes the liberty of doing some simple math. Three daily servings of nutra-loaf for a five day period is equivalent to fifteen total meals.

9. Plaintiff did see an optometrist on August 26 but it would be stretching it to suggest that nutra-loaf affected his vision.

10. In *Finney,* the inmates were also served a substance known as "grue". The court did not provide a description of "grue" and so a comparison cannot be made to nutra-loaf. See footnote 7.

the Eighth Amendment. The policy of the penitentiary mandates that "initial Nutrient Loaf placement will not exceed five (5) consecutive days for the first incident." The maximum placement is fifteen (15) days. (Exhibit 4 to Defendants' Memorandum in Support of Motion for Summary Judgment). The punishment is not grossly disproportionate to the offense and serves the legitimate purpose of maintaining order in the IMU.[11]

It should be emphasized that decision of this court is limited to the particular facts and circumstances of the plaintiff's case. This decision is not to be construed as a blanket approval of the use of nutra-loaf. Nutra-loaf could conceivably constitute cruel and unusual punishment under a different set of facts. For example, if an inmate has a documented violent reaction to nutra-loaf, but prison officials continue to serve him this "substance", there is a much stronger possibility that an Eighth Amendment claim could be successful.

### B.  Manner of Serving Nutra–Loaf

■■■  Thus far, the only concern has been whether nutra-loaf passes constitutional muster as sustenance for inmates. Unfortunately, this is also the only issue addressed by the defendants' memorandum. Equally important, however, is the manner in which nutra-loaf is served. Any food item, including nutra-loaf, which is served in an unsanitary environment raises the issue of cruel and unusual punishment. Nutritional adequacy is irrelevant if food is served in an unclean manner. See *Toussaint v. McCarthy*, 597 F.Supp. 1388 (D.C. Cal.1984) (Food served is deficient, even when nutritionally complete, if prepared under conditions so unsanitary as to make it unwholesome and a threat to the inmates who consume it).

The plaintiff argues that his constitutional rights were violated since he was not provided with eating utensils and because the nutra-loaf was thrown onto the floor of his cell via the "cuff-port". In *U.S. v. Michigan,* the lack of eating utensils seemingly did not disturb the court since the opinion does not include any discussion on that particular issue. Despite the defendants' failure to likewise discuss this specific issue in their memorandum, this court finds that it was not cruel and unusual for this plaintiff to eat the nutra-loaf with his hands. Taking away utensils for limited period of time is an appropriate punishment especially when the underlying offense, as in this case, involves the misuse of such utensils. Furthermore, there is no indication that it is particularly difficult to eat nutra-loaf with one's hands. In fact, perhaps it is easier and more efficient to use the hands to eat nutra-loaf. Based on the defendants' description, the texture of nutra-loaf almost appears to be akin to meat loaf or a loaf of bread.[12] Both of those items can certainly be eaten without the aid of utensils.

Of course, under different circumstances, a lack of eating utensils may be a violation of the Eighth Amendment. For example, if an inmate is not afforded the opportunity to properly sanitize his hands before eating or has a medical condition affecting his hands (i.e. some form of skin disorder), there is a risk of contamination to the food. This plaintiff has not alleged any such circumstance.

There is one factual dispute, however, which requires that only "partial" summary judgment be granted. The defendants neither admit or deny that the nutra-loaf is thrown on the floor of the isolation cell while the inmate stands at the back of the cell. This raises some very important questions. First, if the nutra-loaf is indeed thrown or placed on the floor, what steps are taken to insure that it will not become

---

**11.** In *Rust v. Grammer,* 858 F.2d 411, 414 (8th Cir.1988), the court determined that serving two cold sandwiches and water three times a day, although probably nutritionally inadequate, was justified for a limited time in order to curtail a disruptive situation in which inmates were throwing hot food at the guards and contaminating the food supply by throwing urine and feces into the food cart. Cold sandwiches may be more appetizing, but nutra-loaf has the advantage of being nutritionally adequate.

**12.** Plaintiff does not offer a contrary description.

contaminated? Obviously, if the nutra-loaf is not served on a tray, is there some type of protective wrapping? The defendants gave no such indication in their statement of material facts or in their memorandum. Secondly, if admitted as factual, is there some justification for "throwing" the nutra-loaf on the floor while the inmate stands at the back of his cell? Even with an allegedly protective wrapping, it would seem that if the nutra-loaf is placed on the floor, there is a much greater risk of contamination.

Defendants may wish to address these concerns in an additional motion. Otherwise, it does appear that there remains one triable issue of fact.

### C. Other Matters

■ The plaintiff alleges that the use of food as punishment is prohibited by state law. Plaintiff, however, does not support his conclusory allegation with any specific statutory or case law citations. After reviewing Washington state law, this court can find no basis for the allegation.

Plaintiff suggests in his complaint that the incident for which he was infracted was the result of a fabrication by the inmate on whom plaintiff allegedly threw water. However, as previously indicated, plaintiff admitted the infraction at a disciplinary hearing and in a deposition. Plaintiff was afforded an appeal from the disciplinary hearing, the result of which also went against the plaintiff. Viewing the allegations of plaintiff's complaint in light of these subsequent events, it appears that there are no due process violations and plaintiff does not allege any such violations.

■ Although plaintiff has not argued this point, the fact that he was placed on nutra-loaf prior to the disciplinary hearing does not constitute a due process violation. In doing so, this court follows the reasoning of *U.S. v. Michigan,* 680 F.Supp. at 278–279. The state interest in effectively preventing the throwing of food and other substances by inmates outweighs the interest of the inmates in receiving regular prison food. Additionally, the deprivation of regular food is only temporary.

Finally, the court notes that, although not submitted as a basis for the pending motion, the defendants have asserted qualified immunity as an affirmative defense to the plaintiff's § 1983 action. This court would suggest that the parties examine the recent U.S. Supreme Court decision in *Will v. Michigan Department of State Police,* — U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) as it may effect this particular case.

### V.

### CONCLUSION

Based on the undisputed facts which have been presented, the serving of nutra-loaf to this plaintiff does not, as a matter of law, constitute a violation of his Eighth Amendment right against cruel and unusual punishment. To that extent, plaintiff does not have a cause of action under 42 U.S.C. § 1983. However, a triable issue of fact remains with respect to the manner in which nutra-loaf was served to the plaintiff. This court cannot rule as a matter of law that this particular claims does not amount to a violation of constitutional rights.

IT IS HEREBY ORDERED THAT the defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART.