**Steven Carl ADAMS, Plaintiff,**

v.

**Lawrence KINCHELOE, Sgt. Frank and R. Percifield, Defendants.**

**No. C–88–593–RJM.**

United States District Court,
E.D. Washington.

March 27, 1990.

Steven Carl Adams, pro se.

John Scott Blonien, Washington State Asst. Atty. Gen., for defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ROBERT J. McNICHOLS, District Judge.

BEFORE THE COURT is the defendants' motion for summary judgment (Ct. Rec. 18). This is the second motion for summary judgment filed by defendants. This court granted partial summary judgment to the defendants by an order dated January 29, 1990 (Ct. Rec. 17). 743 F.Supp. 1385. In that order, this court found that the serving of nutra-loaf to plaintiff did not amount to cruel and unusual punishment under the Eighth Amendment to the United States Constitution. However, this court found that an issue of material fact remained with respect to the "manner" in which plaintiff was served nutra-loaf. Defendants' second motion addresses this issue.

### SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, this court must determine if a fair-minded jury could return a verdict for the nonmoving party. *Id.* at 252, 106 S.Ct. at 2512. The party seeking summary judgment must show that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law by "pointing out" to the court that there is an absence of evidence to support the nonmov-

ing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Id.* at 585–586, 106 S.Ct. at 1355–1356. The nonmoving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. *Id.* If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, all inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Id.*

### DISCUSSION

A. *Local Rules*

Plaintiff has not filed a response to the defendants' second motion for summary judgment. Pursuant to LR 7(h)(5), a failure to timely file a memorandum of points and authorities in support of or in opposition to any motion may be considered by the court as consent on the part of the party failing to file such memorandum to the entry of default.

Pursuant to LR 56(c), in determining any motion for summary judgment, the court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by the record asset forth in LR 56(b). Local Rule 56(b) provides that any party opposing a motion for summary judgment must within eleven (11) days of service of the motion, file a statement of material facts setting forth the specific facts which the opposing party asserts establishes a genu-

ine issue of material fact precluding summary judgment.

Plaintiff's failure to comply with the aforementioned local rules is a sufficient basis in itself to grant defendants' motion for summary judgment. Since plaintiff has not controverted the defendants' statement of material facts, this court accepts those facts to be true for the purpose of this motion.

## B. *Facts*

For the purpose of disposing of this motion, this court assumes the same facts set forth in its previous order dated January 29, 1990. The following additional facts are supplied by defendants' most recent motion:

1. Nutra-loaf is brought on a tray from the kitchen wrapped in at least four (4) layers of plastic wrapping.

2. If an inmate had displayed assaultive or disruptive behavior, he would not be allowed to retrieve the nutra-loaf from the cuff port located on the cell door.

3. Plaintiff was asked to stand at the back of his cell door while the nutra-loaf was dropped through the cuff port.

4. Inmates in the Intensive Management Unit (IMU) have running water in their cells and are supplied with bars of soap.

5. Inmates in the IMU are supplied with cleaning products and are responsible for cleaning their cells.

6. Plaintiff had running water in his cell and was supplied with bar soap and cleaning products.

7. The nutra-loaf policy is a response to inmate misuse of food trays, containers or utensils.

8. Plaintiff was served nutra-loaf without the benefit of a tray or utensils.

## C. *The Eighth Amendment*

In order to successfully assert an action under 42 U.S.C. § 1983, it is necessary to show that the conduct complained of has been committed by a person acting under color of state law and the conduct must deprive the plaintiff of rights, privileges, or immunities secured by the constitutional laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

The defendants contend that the conduct complained of in the instant case is not cruel and unusual under the Eighth Amendment and hence, plaintiff is not entitled to relief under 42 U.S.C. § 1983.

■ The Eighth Amendment, as applied to convicted prisoners, involves consideration of three factors: 1) the wanton and unnecessary infliction of pain; 2) punishment which is disproportionate to the severity of the crime; and 3) conditions which, alone or in combination, deprive an inmate of the minimal civilized measure of life's necessities. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399–2400, 69 L.Ed.2d 59 (1981).

"[C]onduct that does not purport to be punishment must involve more than ordinary due care.... It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause...." *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (citations omitted). A prison condition constitutes "unnecessary and wanton infliction of pain" when the condition violates "evolving standards of decency," or is so totally without penological justification that it results in the gratuitous infliction of suffering." *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir.1982) (citations omitted).

■ In the Ninth Circuit, each unrelated condition that allegedly contributed to the violation of plaintiff's Eighth Amendment rights is considered separately, that is, "a number of *unrelated* conditions, each of which satisfy eighth amendment requirements, cannot in combination amount to an eighth amendment violation." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986) (emphasis original), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). However, related conditions may be combined in determining whether there is a violation of the Eighth Amendment.

"[R]elated conditions are those conditions that combine to deprive a prisoner of a discrete basic human need, [e.g.], food, clothing, shelter, sanitation, medical care and personal safety." *Id.* at 1107.

In determining whether any condition or combination of related conditions violates the Eighth Amendment, the court "may consider the length of time that the prisoner must go without these benefits." *Hoptowit*, 682 F.2d at 1258. The court may also consider the existence of emergency situations. "[W]hen a genuine emergency exists, prison officials may be more restrictive than they otherwise may be, and certain services may be suspended temporarily. The more basic the particular need, the shorter the time it can be withheld.... In determining the existence of such needs, we must give reasonable leeway to prison officials." *Hoptowit*, 682 F.2d at 1259. " 'Prison administrators ... should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " *Albers v. Whitley*, 475 U.S. at 321–322, 106 S.Ct. at 1085 (citing to *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979)); *Redman v. County of San Diego et al.*, 896 F.2d 362 (9th Cir.1990).

### D. *Plaintiff's Claim Does Not Amount to Violation of Eighth Amendment*

 Food served to inmates is deficient under constitutional standards, even when nutritionally complete, if it is prepared under conditions so unsanitary as to make it unwholesome and a threat to the health of those inmates who consume it. *Toussaint v. McCarthy*, 597 F.Supp. 1388 (1984).

In the initial order, this court found that no constitutional violation arose from the fact that plaintiff was required to eat the nutra-loaf without the aid of eating utensils. In that regard, this court's finding is consistent with the decision in *U.S. v. Michigan*, 680 F.Supp. 270 (W.D.Mich.1988). The *Michigan* case involved a substance called "food loaf" which is very similar to nutra-loaf. The "food loaf" is tightly wrapped in plastic and served to inmates without tray or utensils. Although the court in that case did not discuss the lack of trays and eating utensils, it did make it clear that the absence of those items was not a per se violation of the Eighth Amendment. The court found there is a legitimate state purpose in preventing the throwing of food, utensils, and human waste by removing the opportunity to engage in such behavior and by impressing inmates with the understanding that there will be unpleasant results if they engage in such prohibited behavior. *Id.* at 274. The court added that this type of misconduct poses a threat to the safety of guards and fellow inmates, plus making it difficult to provide a sanitary living environment within the prison. *Id.* at 277–278.

In the case before the court, it was precisely because of plaintiff's misuse of utensils that he was placed on the nutra-loaf diet. Plaintiff admitted that he threw a cup of water at a fellow inmate. In addition, it is uncontroverted that plaintiff was provided with soap so that he could maintain his personal hygiene. (Affidavit of Richard Bauer at Ct. Rec. 19). Plaintiff was provided with the means to avoid contamination. Under these circumstances, this court does not find it "cruel and unusual" that plaintiff was required to eat nutra-loaf with his hands.

This court expressed some concern over plaintiff's allegation that he was forced to stand at the back of his cell while the nutra-loaf was dropped through the cuff port and presumably onto the floor. Defendants now acknowledge that this did occur, however, they claim there was a legitimate purpose for serving the food in this manner. According to the uncontroverted affidavit of Richard Bauer (Ct. Rec. 19), only inmates who had displayed disruptive or assaultive behavior were required to stand at the back of their cells. Disruptive behavior includes using containers to throw substances at inmates or correctional staff.

This court finds that there was a legitimate and rational purpose for requiring plaintiff to stand at the back of his cell.

Plaintiff had previously displayed "disruptive" behavior by throwing a cup of water at another inmate. It is reasonable for correctional officers to do what is necessary in order to avoid repeat incidents. Based on plaintiff's prior conduct, there was a some likelihood that plaintiff might also engage in some disruptive behavior with the nutra-loaf (i.e. throw it at the person serving it).

Mr. Bauer's uncontroverted affidavit states that the nutra-loaf was wrapped in at least four (4) layers of plastic wrapping in order to keep it warm and to avoid contamination. As defendants point out, plaintiff does admit in his deposition that there was some type of wrapping. (Deposition of Plaintiff at p. 24; Exhibit 6 to Ct. Rec. 12). Plaintiff also admitted in his deposition that the nutra-loaf was not "thrown" into his cell, but rather that it was "dropped." (Deposition of Plaintiff at p. 14; Exhibit 6 to Ct. Rec. 12). There is no evidence that the nutra-loaf served to plaintiff spilled out of the protective wrapping and onto the floor as a result of being "thrown," "dropped" or improperly wrapped. Finally, it is uncontroverted that IMU inmates are provided with cleaning supplies on a regular basis. (See affidavit of Richard Bauer; Ct. Rec. 19). Plaintiff makes no allegations as to the cleanliness or uncleanliness of his cell. In any event, if plaintiff were seriously concerned about possible contamination, he had the means at his disposal to alleviate that risk. It is not unreasonable, especially for security purposes, to give the IMU inmates the responsibility for maintaining their cells.

There is nothing pleasant or dignified about having one's food dropped on the floor, even if the risk of contamination has been minimized. There is nothing pleasant or dignified about eating food without utensils and a tray, (assuming that the food is of a type normally not eaten without the use of such items). However, this does not rise to the level of an Eighth Amendment violation. This becomes especially clear when one reviews cases in which courts have found Eighth Amendment violations for unsanitary eating environments. *See Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980) *cert. den.*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981) (kitchen equipment in disrepair; standing pools of water because drains did not function; rotting food on the floors; floors, walls, windows and food storage shelves in the food service area soiled with dirt and rodent droppings; mold in the walk-in cooler; rodent and insect infestation; floor fans cause dust and lint to be blown over the food preparation area); and *Palmigiano v. Garrahy*, 443 F.Supp. 956 (D.R.I.1977) *cert. den.*, 449 U.S. 839, 101 S.Ct. 115, 66 L.Ed.2d 45 (1980) (evidence of rats, mice, and cockroaches throughout the food service area; mice droppings found in open containers of food; stoves and ventilation hoods were encrusted with grease and grime, etc.). The facts alleged by plaintiff pale in comparison to *Ramos* and *Palmigiano*.

### E. Washington Administrative Code and Due Process

■ In the initial order, this court noted the plaintiff's contention that state law prohibits the use of food as punishment. However, this court could not find any law in support of the plaintiff's conclusory allegation. Additional research has uncovered Washington Administrative Code (WAC) 137–28–110(2) which reads as follows:

Lowering the quantity or the quality of food and deprivation of clothing, bedding, bed or normal hygienic implements shall not be used as sanctions.[1]

■ Procedural due process, which has been identified as an aspect of the Due Process Clause of the Fourteenth Amendment[2], has been defined as a requirement that a person whom a state seeks to deprive of life, liberty, or property must be given notice of the proceedings against him and a hearing in which to defend himself, and that the problem of the propriety of

---

1. Neither party has cited the WAC provision in any of their pleadings or briefs.

2. n3 This clause reads, "... nor shall any State deprive any person of life, liberty, or property, without due process of law ..."

the deprivation, under the circumstances presented, must be resolved in a manner consistent with essential fairness. One category of persons entitled to procedural due process consists of persons faced with the potential deprivation of a "liberty interest." Under certain circumstances, prisoners who are subject to disciplinary proceedings conducted by prison officials are considered to have a liberty interest at stake.[3]

A constitutionally protected liberty interest may be created by statutes or regulations that impose substantive limitations on the exercise of official discretion. *Hewitt v. Helms,* 459 U.S. 460, 470–71, 103 S.Ct. 864, 870–71, 74 L.Ed.2d 675 (1983). To establish a protected interest, a prisoner must show that particularized standards or criteria guide the decision maker. *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983). "If the decision maker is not 'required to base its decisions on objective and defined criteria,' but 'can deny the requested relief for any constitutionally permissible reason or for no reason at all,' *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 467 [101 S.Ct. 2460, 2466, 69 L.Ed.2d 158] (1981) (Brennan, J., concurring), the State has not created a constitutionally protected liberty interest." *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747. In other words, state statutes or regulations must exist which contain language of a sufficiently mandatory character in order for a protected liberty interest to be created. *See Wright v. Enomoto,* 462 F.Supp. 397, (N.D.Cal.1976), *aff'd Enomoto v. Wright,* 434 U.S. 1052, 98 S.Ct.

1223, 55 L.Ed.2d 756 (1978), later proceeding *Wright v. Rushen,* 642 F.2d 1129 (9th Cir.1981), on remand *Toussaint v. Rushen,* 553 F.Supp. 1365 (N.D.Cal.1983), *aff'd in part and vacated in part Toussaint v. Yockey,* 722 F.2d 1490 (9th Cir.1984), later proceeding *Toussaint v. McCarthy,* 597 F.Supp. 1388 (N.D.Cal.1984), later proceeding *Toussaint v. McCarthy,* 597 F.Supp. 1427 (N.D.Cal.1984), and *aff'd in part and revd in part, vacated in part Toussaint v. McCarthy,* 801 F.2d 1080 (9th Cir.1986), *cert den. Toussaint v. McCarthy,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987), later proceeding *Toussaint v. McCarthy,* 662 F.Supp. 1583 (N.D.Cal.1987), later proceeding *Toussaint v. McCarthy,* 826 F.2d 901 (9th Cir.1987), later proceeding *Rowland v. United States Dist. Court for Northern Dist.,* 849 F.2d 380 (9th Cir.1988), and on remand *Toussaint v. Rowland,* 711 F.Supp. 536 (N.D.Cal.1989).

As already noted, other than an unsupported conclusory allegation that the serving of nutra-loaf is prohibited by state law, plaintiff's complaint does not allege due process violations. It is concerned only with an Eighth Amendment claim. Accordingly, plaintiff has failed to allege facts sufficient to invoke procedural due process in either disciplinary or administrative matters.[4]

Even if the plaintiff had made such allegations and it were assumed that the WAC provision creates a liberty interest, the record shows that plaintiff was afforded procedural due process.[5] Plaintiff was giv-

---

**3.** Supreme Court cases dealing with this issue include *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), reh. den. 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155, *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) and *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). In these cases the Supreme Court held that the plaintiffs had not lost any liberty or property interest and hence were not entitled to procedural due process. Crucial to these decisions was the Court's conclusion that the relevant statutes, regulations and customs did not give rise to any justifiable expectation that the plaintiffs' circumstances would not change for any reason or no reason.

**4.** With one exception, there is no case law construing the effect of WAC 137–28–110. There is

an unpublished decision of the Ninth Circuit which refers to the WAC provision in the nutra-loaf context. The decision held that the WAC 137–28–110 may give rise to a liberty interest cognizable under the Due Process Clause of the Fourteenth Amendment. Unfortunately, the circuit rules prevent this court from citing the decision as precedential authority. 9th Cir.R. 36–3.

**5.** As noted in the first order, this court does not buy the state's argument that nutra-loaf is not really a punishment, but rather a "behavior modification" device. These semantic subtleties cannot hide the plain and simple fact that nutra-loaf is a punitive measure designed to deter inmate misconduct.

**1400**

en written notice of the infraction and the penalty. He was afforded a disciplinary hearing at which he was allowed to testify and did in fact explain the circumstances surrounding the incident. (Deposition of Plaintiff at pp. 8–12; Exhibit 6 to Ct. Rec. 12.) The record shows plaintiff appealed the hearing decision which found him guilty of the infraction. The appeal was denied August 29, 1988. (Exhibit 1 to Ct. Rec. 12). Furthermore, although plaintiff suggests in his complaint that the charge against him was fabricated, plaintiff candidly admitted at the hearing and at his deposition that he did indeed commit the act charged. (Exhibit 2 to Ct. Rec. 12 and Deposition of Plaintiff at p. 9; Exhibit 6 to Ct. Rec. 12).

■ The record shows that plaintiff was placed on nutra-loaf prior to the disciplinary hearing and possibly even before he received formal written notice of the infraction. Plaintiff was placed on the nutra-loaf diet commencing August 23, 1988 (Exhibit 3 to Ct. Rec. 12) and the hearing was held August 25 (Exhibit 2 to Ct. Rec. 12). Nevertheless, there would still be no due process violation. First, the state has a strong interest to impose the nutra-loaf diet as quickly and consistently as possible in order for the punishment to be effective. This is because an inmate who has thrown food or waste is likely to be agitated and violent and may very well repeat the same act at the very next opportunity. Secondly, the deprivation of regular food is only temporary. *U.S. v. Michigan*, (cited supra), at p. 278. Plaintiff was kept on the nutra-loaf diet for only five (5) days.

### F. *Summary*

Based on the undisputed facts of record, this court finds as a matter of law that the manner in which plaintiff was served nutra-loaf is not cruel and unusual punishment under the Eighth Amendment. There are no genuine issues of material fact to preclude summary judgment.

In addition, the plaintiff has not alleged due process violations under the Fourteenth Amendment. Even if it were assumed that Washington law creates a liberty interest in an inmate's diet, the record shows that plaintiff received all procedural protections to which he was constitutionally entitled.

IT IS HEREBY ORDERED AS FOLLOWS:

1. Defendants' motion for summary judgment is GRANTED.

2. Plaintiff's complaint is DISMISSED with prejudice. The Clerk shall enter judgment accordingly.